## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**ANN MARIE WHEELER, INDIVIDUALLY
AND AS SPECIAL ADMINISTRATRIX OF
THE ESTATE OF YOLANDA JO WHEELER,
DECEASED**                                                    **PLAINTIFF**

**v.**                              **CASE NO. 3:06-CV-00068 GTE**

**JOSHUA CARLTON AND
MARTEN TRANSPORT, LTD**                                     **DEFENDANTS**

### ORDER

Presently before the Court are Defendant Marten Transport Ltd.'s Motion for Summary

Judgment on the punitive damages issue; Defendant Marten Transport Ltd's Motion to Dismiss

the negligent hiring and retention claims; and Defendants' Motion in Limine to Exclude the

Expert Testimony of William E. Hampton.

**I.  Background**

The accident giving rise to this suit occurred on October 4, 2005 at the intersection of

State Highway 118/North Airport Road and West Service Road in West Memphis, Arkansas.  It

is undisputed that Joshua R. Carlton was operating a tractor-trailer owned by Marten Transport,

Ltd. ("Marten Transport").  It is also undisputed that Mr. Carlton was traveling north on State

Highway 118/North Airport Road prior to the accident, and stopped at the intersection of State

Highway 118/North Airport Road and West Service Road in order to make a left turn.

Plaintiff maintains that Yolanda Wheeler, Plaintiff's decedent, was traveling south on

State Highway 118/North Airport Road prior to the collision, and that Mr. Carlton made a left

1

turn into the path of the decedent's vehicle, thus causing the accident. Defendants maintain that Yolanda Wheeler was traveling south and then east on the West Service Road prior to the accident, and that as she approached the rear of the second of two vehicles stopped at the stop sign on the West Service Road, she veered across the double yellow line of the West Service Road in order to avoid striking the rear of the second vehicle and traveled forward in the oncoming or wrong lane of the West Service Road. Defendants state that as the decedent proceeded forward in the wrong lane of the West Service Road, Mr. Carlton was making his left-hand turn onto the West Service Road, and that just prior to impact, the decedent swerved back to her right and collided with the front of the tractor being operated by Mr. Carlton.

Plaintiff's action was originally filed in the Circuit Court of Crittenden County, Arkansas, but was subsequently removed to this Court. The original action brought by the Plaintiff alleged that the accident was caused by the negligence or fault of Joshua R. Carlton while operating a tractor-trailer owned by Marten Transport within the scope of his employment with Marten Transport. After removal, the Defendants answered the Complaint and denied that the accident was caused by any negligence or fault of Joshua R. Carlton. The Defendants admitted the tractor-trailer being operated by Mr. Carlton at the time of the accident was owned by Marten Transport and further admitted Mr. Carlton was an employee of Marten Transport at the time of the accident.

The Plaintiff filed a Motion for Leave to amend her Complaint on September 11, 2006, which was identical to the original Complaint, except that it added one paragraph alleging that Defendant Marten Transport was liable to the Plaintiff on the theory of negligent hiring and retention. Defendant responded to Plaintiff's Motion for Leave to Amend arguing that because no

claim for punitive damages was being made, the proposed Amended Complaint added nothing to the case except the potential for confusion of the trier of fact and prejudice to the Defendant. Thereafter, Plaintiff filed an Amended and Substituted Motion for Leave to Amend, which added a claim for punitive damages.  The Court subsequently granted this Motion for Leave to Amend.

Plaintiff's First Amended and Substituted Complaint alleges that Defendant Marten Transport is not only vicariously liable, but is also independently liable to Plaintiff on the theory of negligent hiring and retention.  It also alleges that the actions of Defendant Marten Transport in hiring and retaining Defendant Carlton "rise to the level of willful and wanton conduct and support a claim for punitive damages," that Defendant Marten Transport "knew or ought to have known, in light of the surrounding circumstances, that its hiring/retention of Defendant Carlton would naturally and probably result in injury to an individual, such as Yolanda Wheeler, who was a foreseeable plaintiff," and that Defendant Marten Transport's "hiring/retention of Defendant Carlton was in reckless disregard of the consequences."

Separate Defendant moves the Court for summary judgment as to the Plaintiff's claim for punitive damages based upon allegations of negligent hiring and retention.  If the motion for summary judgment is granted, the said Defendant further moves the Court to dismiss the allegations of negligent hiring and retention as being duplicative of the *respondeat superior* claim.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.

1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in

determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a
> need for trial-- whether, in other words, there are genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit set out the burdens on the parties in connection with a summary

judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to
> demonstrate, i.e., '[to] point[] out to the District Court,' that the record
> does not disclose a genuine dispute on a material fact.  It is enough for the
> movant to bring up the fact that the record does not contain such an issue
> and to identify that part of the record which bears out his assertion.  Once
> this is done, his burden is discharged, and, if the record in fact bears out
> the claim that no genuine dispute exists on any material fact, it is then the
> respondent's burden to set forth affirmative evidence, specific facts,
> showing that there is a genuine dispute on that issue.  If the respondent
> fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th

Cir. 1988) (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of [the record] . . .

which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  However, the moving party

is not required to support its motion with affidavits or other similar materials negating the

opponent's claim.  *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute

on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. Rule 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

The district court must base its determination regarding the presence or absence of a material issue of fact on evidence that would be admissible at trial. *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993).  Because the Motion in Limine regarding Mr. Hampton concerns the admissibility of evidence presented in connection with the motion for summary judgment, the Court will first consider that pending motion in limine.

### III.  Motion in Limine - William E. Hampton (Docket No. 72)

Defendants move this Court for an Order prohibiting the Plaintiff from calling Mr. William E. Hampton as an expert witness in the field of hiring and retention of truck drivers. Defendants argue that Mr. Hampton does not have the qualifications, by knowledge, skill, experience, training or education, to testify as an expert in this area and his opinions are not based upon sufficient facts or data, nor is his anticipated testimony the product of reliable principles and methods.  Defendants further argue that scientific, technical, or other specialized knowledge will not be of assistance to the trier of fact in understanding the evidence or in determining facts in issue.  Plaintiff argues that Mr. Hampton's practical knowledge, skill, experience, and training qualifies him as an expert in the field of hiring practices of a motor

carrier.  Furthermore, Plaintiffs argue that Mr. Hampton's opinions are founded upon specialized

knowledge and firm principles, not within the knowledge of a lay person.  Plaintiffs contend that

Mr. Hampton is qualified as an expert and will assist the trier of fact in determining a fact in

issue.

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact
to understand the evidence or to determine a fact in issue, a witness qualified as an
expert by knowledge, skill, experience, training, or education, may testify thereto
in the form of an opinion or otherwise, if (1) the testimony is based upon
sufficient facts or data, (2) the testimony is the product of reliable principles and
methods, and (3) the witness has applied the principles and methods reliably to the
facts of the case.

Rule 702 was amended in 2000 in response the holdings in *Daubert v. Merrell Dow*

*Pharmeceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167

(1999).  *See* Fed. R. Evid. 702 advisory committee's note.  The 2000 Advisory Commmittee's

note states that trial judges have the responsibility of acting as gatekeepers to exclude unreliable

expert testimony.  *See* Fed. R. Evid. 702 advisory committee's note.  A trial court is to consider

factors such as:

(1) whether the expert's technique or theory can be or has been tested---that is,
whether the expert's theory can be challenged in some objective sense, or whether
it is instead simply a subjective, conclusory approach that cannot reasonably be
assessed for reliability;

(2) whether the technique or theory has been subject to peer review and
publication;

(3) the known or potential rate of error of the technique or theory when applied;
(4) the existence and maintenance of standards and controls;

(5) whether the technique or theory has been generally accepted in the scientific
community;

(6) whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying;"

(7) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;

(8) whether the expert has adequately accounted for obvious alternative explanations;

(9) whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting;"and

(10) whether the field of expertise claimed by the expert is known to reach reliable result for the type of opinion the expert would give.

*See* Fed. R. Evid. 702 advisory committee's note. "The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." *See* Fed. R. Evid. 702 advisory committee's note (citing American College of Trial Lawyers, *Standards and Procedures for Determining the Admissibility of Expert Testimony after* Daubert, 157 F.R.D. 571, 579 (1994) ("[W]hether the testimony concerns economic principles, accounting standards, property valuation or other non-scientific subjects, it should be evaluated by reference to the 'knowledge and experience' of that particular field.").

The Advisory Committee's Note explains that the terms "principles" and "methods" when applied to technical or other specialized knowledge may encompass the application of extensive experience to analyze the facts presented. *See* Fed. R. Evid. 702 advisory committee's note. If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for

the opinion, and how that experience is reliably applied to the facts. *See* Fed. R. Evid. 702 advisory committee's note.

"[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Miles v. General Motors Corp.*, 262 F.3d 720, 724 (8th Cir. 2001) (internal quotations omitted).  However, this Court "must ensure that the testimony admitted under Rule 702 is both relevant and reliable." *Id.*  "Although expert opinion embracing an ultimate issue is permissible under Federal Rules of Evidence 704(a), 'courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion.'" *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006).  "[E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.  *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35, 82 S. Ct. 1119, 1122 (1962). "It is important also to note that Rule 702 'does not rank academic training over demonstrated practical experience.' That is, an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise." *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990) (internal citation omitted).

Here, Mr. Hampton states in his deposition that through the Recruit School in 1978, United States Department of Transportation's ("USDOT") Hazardous Materials Compliance &

Enforcement training in 1984, and USDOT Hazardous Material - Cargo Tanker School in 1988, he received a "large block of information . . . on the qualifications of a commercial driver and their operating procedures upon the roadway."[1]  However, Mr. Hampton admits that these courses approached the issues of qualifications of drivers from a law enforcement standpoint.[2] Mr. Hampton attended a one-week National Committee for Motor Fleet Supervisors, UCMO, course in 1991 that addressed managing safety operations in a commercial motor vehicle fleet.[3] He also attended a four to five day American Trucking Association conference on accident litigation and reconstruction in 1995, and another in 1998, and states that such conferences discuss the qualifications of drivers and the operations of a company, in addition to reconstruction of accidents.[4]  Mr. Hampton attended a JJ Keller & Associates Commercial Driver Qualification & Audits two-day seminar in 2002, which dealt with driver qualifications pursuant to the Federal Motor Carrier Safety Regulations.[5]  He attended a Missouri Motor Carriers Association conference regarding the new hours of service requirements pursuant to the Federal Motor Carrier Safety Regulations in 2003.[6]

As the Director of Safety for Champion Distribution Services from 1991 until 1995, Mr.

---

[1]*See* Exhibit A p. 82, Plaintiff's Response to Defendants' Motion in Limine to Exclude the Testimony of William E. Hampton.

[2]*Id.*

[3]*Id.* at 84.

[4]*Id.* at 84-85.

[5]*Id.* at 85-86.

[6]*Id.* at 86.

Hampton was responsible for hiring drivers, developing company policies, ensuring compliance with all federal and state regulations.[7]  Also during that time, he was a member of the Missouri Motor Carriers Association's safety council.[8]  He attended monthly meetings where the members discussed issues on all topics relating to the safe operation of a motor carrier fleet.[9]  W.E. Hampton & Associates performs risk analysis on motor carriers and performs consulting work for motor carriers, which includes ensuring compliance with Federal regulations and development of company policies, i.e. drug and alcohol policies and hiring standards.[10]  Although Mr. Hampton has also given deposition testimony in the past, Mr. Hampton testified in court in May of 2006 regarding driver qualifications and the appropriateness of hiring a driver, in October of 2003 during a trial involving busing safety, in September of 2002 regarding a carrier's compliance with the Federal Motor Carrier Safety Regulations during the hiring process, and in July of 2001 regarding driving hiring standards and qualifications.[11]  Mr. Hampton references research documents from the American Trucking Association in providing his opinion in this case.[12]  Plaintiff also argues that a person must have specialized knowledge to read and interpret some documents containing information relating to this case, specifically the ECM reports,

---

[7] *Id.* at 89.

[8] *Id.* at 87

[9] *Id.*

[10] *Id.* at 92.

[11] *Id.* at 93-97.

[12] *Id.* at 67.

which are reports generated by downloading a tractor's on-board computer.[13]

Mr. Hampton has prepared a letter stating that Marten Transport violated their own hiring guidelines by hiring Mr. Carlton despite Mr. Carlton's statement on his application that he had four speeding violations within the last three years.  Marten Transport's Hiring Criteria lists "No patterns of irresponsible driving habits or more than three moving violations, including one serious moving violation if less than twenty-four months old" as a "Safety Requirement."  *See* Exhibit A, Plaintiff's Response.  Mr. Hampton also notes that Mr. Carlton's employment history "should indicate to a prospective employer, a disregard for safety compliance, and failing to adjust to the operations of an employer."  Mr. Hampton notes that in the three year period before Marten Transport hired Mr. Carlton, he was a driver for six different motor carriers, and in the last ten years, Mr. Carlton has been employed by fourteen different motor carriers.

Mr. Hampton states that "[a] driver's falsification of a driver's daily log is defined by the Federal Motor Carrier Safety Administration as being a Critical Violation, for safety fitness standards," noting that in Mr. Carlton's first month with Marten Transport, an audit of his drivers daily logs illustrate that he falsified these documents on at least three different occasions.  Mr. Hampton notes continuing issues with Mr. Carlton's performance, including another safety and company policy violation by picking up a passenger in his Marten Transport unit, in the months prior to and following the accident.  Mr. Hampton concludes by stating, "It was clear from Joshua Carlton's driving history, his continued unsafe performance, and his absence of control as a driver, there was a real probability of him being involved in an unsafe driving act, which was a

---

[13]*See* Exhibit C, Plaintiff's Response to Defendants' Motion in Limine to Exclude the Testimony of William E. Hampton.

threat to the general public operating on the highways."

While Mr. Hampton's training and experience might in some cases permit him to testify as an expert concerning an employer's hiring and retention policies and procedures, the Court concludes that in this case his testimony as a purported expert would invade the province of the jury and his recital of the specific prior and subsequent acts of the Defendant Joshua Carlton would be prejudicial to the Defendants since that information would be irrelevant and would not assist the jury in determining the cause of this accident.  No one disputes the fact that the Defendant Carlton stopped his tractor-trailer in anticipation of turning left on State Highway 118/North Airport Road on to West Service Road, signaling same.  The central factual issue to be resolved is whether Ms. Wheeler's car approached the accident scene by driving south on the State Highway 118/North Airport Road or by driving south and east on the West Service Road. Mr. Hampton's testimony would not assist the jury in resolving this factual dispute.  Nor would his opinion aid the jury in deciding the speed of the two vehicles involved.  The jury, as men and women of common understanding are certainly capable of comprehending the facts of this case, drawing correct conclusions from them, as are witnesses who claim to possess special or peculiar training or experience, in this case in the area of hiring and retention.  *See* the Court's further discussion of the bases of Mr. Hampton's opinions and their lack of relevance in its analysis of the Motion for Summary Judgment below.  The Court concludes that Mr. Hampton's testimony does not meet the standard set forth in Rule 702 of the Federal Rules of Evidence nor the standard established under *Daubert* and *Kumho Tire*.

Therefore the Court grants the Defendant's Motion in Limine to exclude the opinion testimony of Mr. William E. Hampton.  Nevertheless, in discussing and analyzing the Defendant

Marten Transport, Ltd.'s Motion for Summary Judgment, *see infra*, the Court will assume that

Mr. Hampton's testimony would be admissible.  However, even if such testimony were allowed,

summary judgment would still be proper in this case.

## IV.  Motion for Summary Judgment

It is undisputed that the substantive law of the state of Arkansas governs recovery for

punitive damages in this diversity case.  *See Erie R. Co. V. Tompkins*, 304 U.S. 64 (1938).

Arkansas Code Annotated § 16-55-206 (2003) provides:

In order to recover punitive damages from a defendant, a plaintiff has the burden
of proving that the defendant is liable for compensatory damages and that either or
both of the following aggravating factors were present and related to the injury for
which compensatory damages were awarded:

(1) The defendant knew or ought to have known, in light of the
surrounding circumstances, that his or her conduct would naturally and
probably result in injury or damage and that he or she continued the
conduct with malice or in reckless disregard of the consequences from
which malice may be inferred; and

(2) The defendant intentionally pursued a course of conduct for the
purpose of causing injury or damage.

The Plaintiff must satisfy this burden of proof by "clear and convincing evidence in order to

recover punitive damages from the defendant."  Ark. Code Ann. § 16-55-207.

Summary judgment is appropriate on the issue of punitive damages if the evidence is

such that no reasonable jury could find grounds for awarding punitive damages under the

standard established by Arkansas law, as discussed in *In re Aircraft Accident at Little Rock,*

*Arkansas on June 1, 1999*, 351 F.3d 874, 876 (8th Cir. 2003).  In that case, the Eighth Circuit

discussed the standard set forth for the award of punitive damages under Arkansas law as follows:

> This court has said that an award of punitive damages is justified only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred. In other words, in order to superadd this element of damages by way of punishment, it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice may be inferred. In order to warrant a submission of the question of punitive damages, there must be an element of willfulness or such reckless conduct on the part of the defendant as is equivalent thereto.

*Id.* at 877 (quoting *D'Arbonne Const. Co., Inc. v. Foster*, 354 Ark. 304 (2003)).  However, the Eighth Circuit noted that in the Arkansas Surpeme Court opinion quoted, the Arkansas Supreme Court "summarized the standard slightly differently, stating:"

> Evidence is sufficient to support punitive damages if the party against whom such damages may be assessed, knew or ought to have known, in light of the surrounding circumstances, that the party's conduct would naturally and probably result in injury and that party continued such conduct in reckless disregard of the circumstances from which malice may be inferred.

*Id.* at 877 (quoting *D'Arbonne Const. Co., Inc. v. Foster*, 354 Ark. 304 (2003)).[14]

The Arkansas Supreme Court in *Elrod* also stated the standard applicable to the punitive damages issue in two different ways.  First, the Court stated that "for plaintiff . . .  to be entitled to punitive as well as compensatory damages from [defendant] on the theory of negligent entrustment plaintiff would have had to have proved that [defendant] not only negligently entrusted the vehicle to [its employee], but also that [defendant] willfully and wantonly entrusted the accident vehicle to [its employee]."  *Elrod,* 275 Ark. at 154.  The Court went on to state,

---

[14]

"There is nothing in the record or in the offer of proof consisting of [the employee's] prior bad driving record which would have put the employer on notice or conceivably enabled the employer to foresee that [its employee] would commit a willful and wanton act or possibly an intentional act." *Id.* at 154. It appears that the Arkansas Supreme Court has subsequently applied the first, more generalized, statement of the applicable standard, as demonstrated in *D'Arbonne*.

Defendant Marten Transport argues in its Motion for Summary Judgment that, at all times material to this litigation, Mr. Carlton's possession of a commercial driver's license, in and of itself, negates the requisite element for an award of punitive damages in that Marten Transport could not have known that retention of Mr. Carlton would naturally and probably result in injury or damages to another. It states that possession of a valid commercial driver's license (CDL) indicates that he has passed tests administered by a state of the United States in conformity with the Federal Motor Carrier Safety Regulations, that the state has completed a background check on Mr. Carlton covering his past driving record including a check with the commercial driver's license information system (CDLIS) to determine if he had already been issued a CDL or whether his CDL had been suspended, revoked or cancelled or whether he had been disqualified from operating a commercial motor vehicle. *See* 49 C.F.R. § 383.73.

First, Plaintiff argues that Marten Transport hired Joshua Carlton in violation of its own hiring policies and knew that Mr. Carlton had a history of unsafe driving practices and posited an unreasonable risk of harm to the public. First, Plaintiff argues that Mr. Carlton's work history was unstable, although the "Hiring Criteria" that Marten Transport is to "[use] as a guideline for hiring Company Drivers or Independent Contractors" lists "Stable work history" as a "General

15

Requirement."  Second, Plaintiff argues that Mr. Carlton had a history of irresponsible driving

habits, which are summarized by Plaintiffs as follows:[15]

> (1) On February 6, 1999, Carlton was cited for speeding, involving a commercial vehicle in Crawford County, Ohio (Case Number 99D00625);

> (2) On February 18, 1999, Carlton was cited for speeding 65 in a 55, involving a commercial vehicle in Auglaize County, Ohio (Case Number 99D00814);

> (3) On February 26, 1999, Carlton was cited for violation of lane usage laws in Wadsworth Medina County, Ohio (Case Number 99D00891);

> (4) On December 26, 1999, Carlton's employer reported that he struck a stationary object;

> (5) On December 28, 1999, Carlton's employer reported that he struck a stationary object;

> (6) In August of 2000, Carlton was cited for failure to stop at a stop sign;

> (7) In August of 2000, Carlton pleaded no contest in the Municipal Court of Akron, Ohio and was found guilty of speeding, 93 mph in a 60 mph zone, and possibly for citations regarding "unable to stop in assured clear distance ahead" and "unreasonable for conditions";[16]

> (8) In October of 2000, Carlton was cited for going 47 mph in a 35 mph zone in a commercial vehicle and violating the weight limit by five tons.  It appears that Mr. Carlton changed his plea to no contest to the weigh limit violation, and that the

---

[15]Although a Motion in Limine regarding the driving record of Mr. Carlton is pending, that motion only seeks to exclude Mr. Carlton's driving record during the liability phase.

[16]While Plaintiff's Brief in Support of Response to Motion for Summary Judgment ("Plaintiff's Response") states that Mr. Carlton "pleaded no contest in the Municipal Court of Akron, Ohio and was found guilty of speeding, 93 mph in a 60 mph zone, reckless operation, unable to stop in assured clear distance ahead and unreasonable for conditions," the "Journal Entry" of the Municipal Court of Akron indicates that Defendant changed his plea to no contest and was found guilty with regard to the speeding charge (Count 1), and that the reckless operation charge merged with Count 1 and was dismissed.  *See* Exhibit T, Plaintiff's Response.

speeding charge was dismissed at the direction of the prosecutor;[17]

(9) In October of 2000, Carlton was cited for a commercial moving violation in Mahoning County, Ohio for going 66 mph in a 55 mph zone;

(10) On November 2, 2000, Carlton was cited for following too closely.  He pled no contest and was found guilty on February 6, 2001 in Canton Municipal Court;[18]

(11) In November of 2000, Carlton was cited by the Ohio Highway Patrol for speeding in a commercial vehicle;[19]

(12)  Mr. Carlton's driver's license was forfeited on April 20, 2001 and reissued on August 21, 2001;

(13) In March of 2003, Carlton was cited for, and pled guilty to, failing to stop at an intersection and for an expired license plate while driving a passenger vehicle;

(14) In May of 2003, Carlton was cited for excessive speed;[20]

(15) In June of 2003, Carlton was cited for longest running FRA date;[21] and

(16) In November of 2003, Carlton was involved in an accident.

Plaintiffs also present the letter from Mr. William E. Hampton of W.E. Hampton & Associates, Inc., which is discussed above, in support of their contention that summary judgment is not appropriate.  As previously stated, Mr. Hampton states that Marten Transport violated their

---

[17]Plaintiff's Brief does not discuss the disposition of this citation.  *See* Exhibit U, Plaintiff's Response.

[18]It appears that this violation occurred in a passenger vehicle, not a commercial vehicle.

[19] *See* Exhibit X, Plaintiff's Response.

[20]While Plaintiff states that this violation occurred in a commercial vehicle, whether the violation occurred in a passenger or commercial vehicle is unclear to the Court from the attached records.  *See* Exhibit Z, Plaintiff's Response.

[21]It is unclear to the Court what "FRA" stands for, and the report referenced by Plaintiff states, "Longest Running FRA Data."  *See* Exhibit AA, Plaintiff's Response.

own hiring guidelines by hiring Mr. Carlton, that Mr. Carlton's employment history "should indicate to a prospective employer, a disregard for safety compliance, and failing to adjust to the operations of an employer," and that Mr. Carlton's "falsification of a driver's daily log is defined by the Federal Motor Carrier Safety Administration as being a Critical Violation, for safety fitness standards." Mr. Hampton notes continuing violations in the months prior to and following the accident.  Mr. Hampton concludes by stating, "It was clear from Joshua Carlton's driving history, his continued unsafe performance, and his absence of control as a driver, there was a real probability of him being involved in an unsafe driving act, which was a threat to the general public operating on the highways."

The Arkansas Supreme Court's comments in *Elrod v. G & R Const. Co.,* 275 Ark. 151, 154, 628 S.W.2d 17, 18-19 (1982), are helpful.  There, the plaintiff sought both compensatory and punitive damages against the employer under two theories: (1) vicarious liability for the employee's negligent acts and willful and wanton conduct committed during the course and scope of his employment and (2) negligent or willful and wanton entrustment of a motor vehicle to the employee.  *Id*. at 153.  The Arkansas Supreme Court noted that

> [F]or plaintiff in this case to be entitled to punitive as well as compensatory damages from [defendant] on the theory of negligent entrustment plaintiff would have had to have proved that [defendant] not only negligently entrusted the vehicle to [its employee], but also that [defendant] willfully and wantonly entrusted the accident vehicle to [its employee].  Even in light of [the employee's] bad driving record, we can only surmise that in some of those instances, he may have negligently operated his motor vehicle.  There is nothing in the record or in the offer of proof consisting of [the employee's] prior bad driving record which would have put the employer on notice or conceivably enabled the employer to foresee that [its employee] would commit a willful and wanton act or possibly an intentional act.

*Id.* at 154.  In *Elrod*, "[t]he record indicated that [the employee] had been involved in some six

18

motor vehicle accidents, two of which resulted in personal injury. The record also indicated that

[the employee] had had citations for failure to yield and unsafe operation of a vehicle unrelated to

the accidents mentioned above. [The employee's] motor vehicle record did not indicate whether

his negligence was the cause of any of the accidents referred to therein." *Id.* at 153.

The driving record of Mr. Carlton is comparable to that of the employee in *Elrod*. Even

considering the employee's bad driving record, the Arkansas Supreme Court in *Elrod* found that

punitive damages were not warranted. This Court previously allowed Plaintiff to amend her

complaint to include the issues of negligent hiring and retention and punitive damages. This

Court found the facts distinguishable from *Elrod* because the plaintiff in *Elrod* would still be

given the right to pursue her claims for both compensatory and punitive damages even if the

negligent entrustment claim was not allowed. Here, however, Plaintiff made no claim for

punitive damages against Defendant Carlton, and therefore, Plaintiff had no means to recover

punitive damages if Plaintiff was not afforded the opportunity to make her case that punitive

damages were warranted with regard to the negligent hiring and retention claims. However, it is

clear from the summary judgment record that the Plaintiff has failed to adequately support such

allegations.

The Court does not adopt Defendants' argument that Mr. Carlton's possession of a

commercial driver's license, in and of itself, negates the requisite element for an award of

punitive damages. However, after careful consideration of the issue of punitive damages and the

evidence presented on the summary judgment record by Plaintiff, the Court finds that no

reasonable jury could find that Marten Transport knew, or ought to have known, in light of the

surrounding circumstances, that its conduct would naturally and probably result in injury and that

19

it continued such conduct in reckless disregard of the circumstances from which malice may be inferred.  Therefore, summary judgment is appropriate on the issue of punitive damages, and Defendants' motion is granted.

Defendants also argue that if the Motion for Summary Judgment is sustained with regard to the punitive damage claim, the negligent hiring and retention claim should also be dismissed as being duplicative because Marten Transport has acknowledged liability pursuant tot he doctrine of *respondeat superior* if the trier of fact concludes Mr. Joshua Carlton was guilty of negligence or fault which proximately caused the accident.  In a previous Order in this case, this Court noted the rule in Arkansas set forth in *Elrod v. G & R Const. Co.,* 275 Ark. 151, 154, 628 S.W.2d 17, 18-19 (1982):

> When a defendant denies liability, no problem is encountered by allowing a plaintiff to proceed under two consistent theories of recovery such as respondeat superior and negligent entrustment. However, when defendant admits liability under one of plaintiff's theories of recovery such as respondeat superior, difficulties do arise and the authorities are divided on the issue whether plaintiff should be allowed to proceed on one or both theories. In view of this Court's holding in *Kyser v. Porter*, 261 Ark. 351, 548 S.W.2d 128 (1977), we are inclined to follow the majority view which allows plaintiff to proceed on only one theory of recovery in cases where liability has been admitted as to one theory of recovery.

This Court, however, recognized that an exception exists to this rule when a plaintiff has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee.  Because the Court finds that no reasonable jury could award punitive damages in connection with the negligent hiring and retention claim, dismissal of the negligent hiring and retention claim is appropriate because the exception to Arkansas's rule no longer applies, as the Plaintiff does not have a "valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee." Therefore,

20

Defendants' motion to dismiss the negligent hiring and retention count is granted.

Accordingly,

IT IS THEREFORE ORDERED THAT Defendants' Motion in Limine to Exclude the Expert Testimony of William E. Hampton (Dkt.# 72)  be, and it is hereby GRANTED.

IT IS FURTHER ORDERED THAT Defendant Marten Transport, Ltd.'s  Motion for Summary Judgment and Motion to Dismiss (Dkt.# 62) be, and it is hereby, GRANTED.

Dated this 4th day of January, 2007.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE